```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
GIZELLA WEISSHAUS,                      :
                    Plaintiff,          :
                                        :
          -v-                           :
                                        :
THE STATE OF NEW YORK; THE OFFICE OF    :
COURT ADMINISTRATION OF THE UNIFIED     :   08 Civ. 4053 (DLC)
COURT SYSTEM; THOMAS J. CAHILL, in his  :
official and individual capacity;       :   OPINION & ORDER
JUDITH N. STEIN, in her official and    :
individual capacity; HAL R. LIEBERMAN,  :
in his official and individual          :
capacity; EDWARD D. FAGAN; ALAN W.      :
FRIEDBERG, in his official and          :
individual capacity; SAUL E. FEDER; MEL :
URBACH, and JOHN and JANE DOES, 1-20,   :
                    Defendants.         :
----------------------------------------X
```

Appearances:

Pro se plaintiff:
Gizella Weisshaus
203 Wilson Street
Brooklyn, NY 11211

For defendants the State of New York, the Office of Court
Administration of the Unified Court System; Thomas J. Cahill,
Alan W. Friedberg, Judith N. Stein, and Hal R. Lieberman:
Andrew M. Cuomo, Attorney General of the State of New York
Monica Connell, Assistant Attorney General
120 Broadway
New York, NY 10271

For defendant Saul Feder:
Carmen Chapman
Thomas Leghorn
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

For defendant Mel Urbach:
Jonathan R. Harwood
Traub Lieberman Straus & Shrewsberry LLP
Seven Skyline Drive
Hawthorne, NY 10532

DENISE COTE, District Judge:

Pro se plaintiff Gizella Weisshaus brings claims related to her attorneys' conduct and the rejection of ethics complaints she filed against them in 1998 and 2000.  She seeks relief against two groups of defendants, the "State Defendants" who handled her complaints, comprised of the State of New York, the Office of Court Administration of the Unified Court System; Thomas J. Cahill, Alan W. Friedberg, Judith N. Stein, Hal R. Lieberman (in their official and individual capacities), and John Does 1-20;[1] and three attorneys, Edward Fagan, Saul Feder, and Mel Urbach.  Fagan and Feder were plaintiff's former attorneys.  Urbach had an unspecified "unwelcome" "legal involvement" with the plaintiff.  Except for Fagan, who filed an answer and counterclaim on December 29, 2008, the defendants have moved to dismiss the amended complaint.  Their motions are granted.

---

[1] Plaintiff identifies Cahill, Friedberg, Stein, and Lieberman as employees of the Departmental Disciplinary Committee of the Supreme Court of New York, Appellate Division, First Department, at the time she filed her disciplinary complaints.

2

BACKGROUND

The following facts are taken from the September 29, 2008 amended complaint except where noted and are presumed to be true for the purposes of this motion.  Weisshaus, a Holocaust survivor, filed a lawsuit in 1996 that was consolidated into In re Holocaust Victim Assets Litigation (the "Swiss Banks Litigation"), which alleged that, inter alia, certain Swiss institutions aided and abetted the Nazi regime and looted the assets of Holocaust victims.  See In re Holocaust Victim Assets Litigation, 105 F. Supp. 2d 139, 141 (E.D.N.Y. 2000).  Weisshaus was originally represented by Fagan in the litigation.  While the parties reached a settlement in principle in 1998, id., Weisshaus opted out of the settlement because she believed that the attorneys were enriching themselves at the expense of the class.  Much of the instant litigation, not at issue in this Opinion, concerns the acrimonious relationship that developed between Weisshaus and Fagan and involves numerous allegations of wrongdoing on each side.

The amended complaint includes three allegations of attorney misconduct, one of which relates to the Swiss Banks Litigation.  First, after opting out of the settlement in that matter, Weisshaus discovered that Fagan and Urbach had deceived the court by "improperly manufactur[ing]" an amended complaint in 2000 in that matter and backdating it to 1997.  Second, Fagan

3

converted an $82,583.04 escrow account in another matter involving the estate of Jack Oestreicher, in which Weisshaus was a fiduciary.[2]  Third, Feder misrepresented to the plaintiff and the court that he was establishing an escrow account for $112,500 "in a matter involving a Sol Mermelstein and others."

In April 1998, plaintiff filed grievances against Fagan and Feder with the Departmental Disciplinary Committee ("DDC") of the Supreme Court of New York, Appellate Division, First Department.  In a letter of May 6, 1998, Lieberman, then chief counsel of the DDC, responded to Weisshaus with respect to the complaint against Fagan, stating that the DDC would await the outcome of an ongoing criminal proceeding before concluding its investigation.  Lieberman then left the employ of the DDC to join a law firm, where he began representing Fagan in the DDC proceedings.  He submitted an answer on Fagan's behalf denying the charges brought by Weisshaus on July 15, 1998.  The complaint against Fagan was later summarily dismissed.  Weisshaus then submitted an expanded complaint on September 1, 2000, which was summarily dismissed by the DDC as well.

Weisshaus filed this lawsuit on April 30, 2008.  Her complaint, amended on September 29, 2008, was not properly served until December 11.  The amended complaint contends that

---

[2] The details of this conversion, plaintiff's fiduciary role, or the relationship between her fiduciary role and the escrow account are not explained in the amended complaint.

4

the State Defendants failed in their duties to investigate and take action concerning her allegations of misconduct against Fagan and Feder, or to investigate the alleged "dual role" of Lieberman in his representation of Fagan.  Weisshaus argues that the DDC and its employees are engaged in "widespread and systematic 'stonewalling' and 'whitewashing' of complaints against attorneys."  She asserts that her complaints have never been properly addressed because the defendants conspired against her to prevent the DDC from fairly addressing the disciplinary complaints.  She charges all defendants with violations of the First and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1985 ("Section 1983" and "Section 1985"), arguing that she was deprived of her constitutional right to a fair and honest judicial system, and seeks to recover $20,000,000 in damages as well as punitive damages.

Plaintiff brings a separate breach of fiduciary duty claim against Fagan, Feder, and Urbach, alleging that they breached duties owed to Weisshaus in their capacities as her attorneys. In a separate breach of contract claim, brought against Fagan alone, the plaintiff also asserts that Fagan breached his agreement to represent her.

On January 16, the State Defendants and Feder moved to dismiss the amended complaint on a variety of grounds, raising standing, statute of limitations, service, and failure to state

a claim issues, among others.  Urbach moved to dismiss on January 21.  The motions were fully submitted on May 1.  An Order of May 4 addressed a request from Feder that he be allowed to file a new motion to dismiss arguing that Weisshaus's claims against him are barred on collateral estoppel grounds.  The Order permitted Feder to file a second motion, with an opportunity for plaintiff to oppose and for Feder to reply.  Feder's second motion was fully briefed on July 14.[3]

## DISCUSSION

As the State Defendants have challenged the existence of subject-matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., by arguing that the plaintiff lacks standing, their argument will be addressed first, followed by the arguments raised by Feder and Urbach that the allegations brought against them should be dismissed under Rule 12(b)(6), Fed. R. Civ. P., on statute of limitations grounds.

1. Standing

The State Defendants submit that there is no subject jurisdiction over Weisshaus's claims, which challenge the dismissal of the disciplinary complaints she filed with the DDC

---

[3] Feder's moving papers treat his second motion to dismiss as a supplement to his January 16 motion, rather than as a replacement.

6

against Feder and Fagan. They argue that Weisshaus lacks standing to challenge a disciplinary proceeding not directed at her, because she has no cognizable interest in the government's alleged failure to investigate.

"Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

As part of establishing that the court has "constitutional power to adjudicate" the case, a party bringing suit in federal court must first establish standing under Article III of the Constitution to prosecute the action. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Put otherwise, "constitutional standing is a jurisdictional prerequisite to suit." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 126 (2d Cir. 2003).

The Supreme Court developed a three-part test for constitutional standing in Lujan v. Defenders of Wildlife, 504 U.S. 551, 560 (1992). See also Ross v. Bank of America, N.A.

7

(USA), 524 F.3d 217, 222 (2d Cir. 2008).  To establish constitutional standing under Article III, "a plaintiff must have suffered an injury in fact that is distinct and palpable; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  Ross, 524 F.3d at 222 (citation omitted).  When presented in satisfaction of the injury-in-fact requirement, any threatened injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical."  Coalition of Watershed Towns v. United States Environmental Protection Agency, 552 F.3d 216, 217 (2d Cir. 2008) (per curiam) (citation omitted).  Elaborating on the redressability requirement, the Second Circuit has explained that

> [r]edressability is the non-speculative likelihood that the injury can be remedied by the requested relief.  It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.

Id. at 218 (citation omitted).

Where a crime victim brings suit contesting the non-prosecution of the alleged perpetrator, courts have found that the victim lacks standing to do so.  As explained in United States v. Grundhoefer, 916 F.2d 788 (2d Cir. 1990), in the context of a challenge to a restitution sentence, the court

noted that "[t]he direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced. It is the defendant and he alone that suffers the direct consequences of a criminal conviction and sentence." Id. at 791. Because it is the subject of the prosecution who suffers "the direct injury," required for standing, "a private citizen generally lacks standing 'to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'" Id. at 792 (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)).

While reaching the same result -- that a complainant or a crime victim lacks standing to object to a failure to investigate or prosecute the accused -- other decisions have found that the complainant's injury is not fairly traceable to the failure to investigate, or that a prosecution or investigation would not redress the injury. In Matter of Appointment of Independent Counsel, 766 F.2d 70 (2d Cir. 1985), for example, a construction company and its owner applied to have the court appoint an independent counsel to investigate statements made by Mario Montuoro to a grand jury, in which he accused the construction company of bribery. Id. at 72. The applicants sued when the government failed to indict Montuoro. Id. at 72-73. The court recognized that the applicants were

9

injured by Monturo's statements impugning their conduct, but found that the injury stemmed from the statements, rather than the government's decision not to prosecute. Id. at 76. Quoting Linda R.S., the court noted that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Id. at 75 (citation omitted). Concluding that the "applicants have failed to demonstrate that their injuries are traceable to the government's failure to prosecute," the court found that the applicants lacked standing. Id. at 76. The court also found that the complaint was not redressable, because the government investigation the applicants sought "would only result in the jailing of Montuoro, not in financial recompense" for the plaintiffs. Id.

Weisshaus's role as a complainant filing a grievance against an attorney does not give her a legally cognizable interest in the disciplinary proceedings that follow the filing of her grievance, just as a crime victim lacks standing to challenge the decision not to prosecute. Linda R.S., 410 U.S. at 619. Private citizens do not have standing to participate in attorney disciplinary proceedings. Application of Phillips, 510 F.2d 126, 126 (2d Cir. 1975) (per curiam).

Similarly, the injury she suffered from the attorneys' misconduct does not confer standing to sue the State Defendants

10

because it is not "fairly traceable" to the government's failure to investigate her complaints. That is, the failure to investigate the complaints is not what caused Feder, Fagan, and Urbach to represent Weisshaus's interests deficiently in the first place. See Pettus v. Morgenthau, 554 F.3d 293, 298 (2d Cir. 2009) (citing Linda R.S. and noting that standing requires a nexus between the injury-in-fact asserted and the claim for relief).

Weisshaus attempts to overcome the challenge to her standing by arguing that she has standing under Judiciary Law § 90, the New York statute vesting the Appellate Division with authority to discipline attorneys. The violation of a right conferred by a statute may create an injury-in-fact:

> In certain situations, the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. The standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112, 118 (2d Cir. 2009).

New York Judiciary Law § 90(2), in relevant part, authorizes the Appellate Division of the Supreme Court of New York to "suspend from practice or remove from office any

11

attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor."  The statute is directed to the Appellate Division.  It does not bestow any rights on complainants and thus cannot serve as the basis for a cognizable injury-in-fact.  See, e.g., Morrow v. Cahill, 718 N.Y.S. 2d 315, 315 (1st Dep't 2000) (petitioner lacks standing to challenge DDC's decision not to institute proceedings against petitioner's former counsel).[4] As plaintiff has thus failed to allege a cognizable injury-in-fact that is fairly traceable to the State Defendants' conduct, Count 1 is dismissed against the State Defendants.

For the same reasons, Count 1 must also be dismissed insofar as it attempts to plead a claim against Feder and Urbach.[5]  Although these two defendants have based their motions

---

[4] Plaintiff also asserts a violation of her First and Fourteenth Amendment rights to due process and to petition her government for a redress of grievances.  The holding of Linda R.S. establishes that she does not suffer a constitutional injury because she lacks a cognizable interest in the prosecution of another.  Linda R.S., 410 U.S. at 619.  Nor does she have a due process claim based any failure to protect her from Fagan and Feder's allegedly illegal acts.  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."  Matican v. City of New York, 524 F.3d 151, 155 (citation omitted).

[5] While plaintiff has arguably pled an injury-in-fact based on these attorneys' alleged misconduct, that misconduct is not fairly traceable to the DDC's subsequent rejection of Weisshaus's disciplinary complaints, the conduct with which Count 1 takes issue.

to dismiss on other grounds, the Court has an independent duty to establish the justiciability of any claim, see Sharkey v. Quarantillo, 541 F.3d 75, 88 (2d Cir. 2008), and where the plaintiff has no standing, the claim must be dismissed.[6]

2. Statute of Limitations

Feder and Urbach seek to dismiss plaintiff's remaining claim against them -- a claim for breach of fiduciary duty -- as time-barred, arguing that the claim is based on conduct occurring, at the latest, in 2000.  Motions to dismiss a complaint on statute of limitations grounds arise under Rule 12(b)(6), Fed. R. Civ. P.  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  A court considering a motion to dismiss

---

[6] Urbach and Feder argue that Count 1 is time-barred.  The statute of limitations for Section 1983 actions filed in New York is three years.  Cloverleaf Realty of New York, Inc. v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009).  The same statute of limitations applies to actions brought under Section 1985.  Paige v. Police Dept. of City of Schenectady, 264 F.3d 197, 199 n.2 (2d Cir. 2001).  The limitations period starts running at the time the plaintiff knows of the injury on which she bases her action.  Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004).  To be timely interposed, the injuries forming the basis of these claims -- the dismissal and the failure to address the complaints -- must have accrued in 2005 or later.
   Plaintiff's claims arise from the handling of disciplinary complaints filed in 1998 and 2000 and the conspiracy to "whitewash" her complaints.  She alleges that both the 1998 and 2000 complaints were summarily dismissed.  Plaintiff does not identify any action in furtherance of the conspiracy that occurred after April 30, 2005, the last date on which her claims could have accrued and been timely.  For this additional reason, therefore, Count 1 would be dismissed.

13

pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). While review is "generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits," a court may also take judicial notice of court documents, including documents filed in state court. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

Claims alleging breach of fiduciary duty are subject to a three-year limitations period if they seek monetary relief, and a six-year limitations period if they seek equitable relief or allege fraud. Kaufman v. Cohen, 760 N.Y.S. 2d 157, 164-65 (1st Dep't 2003); Cooper v. Parsky, 140 F.3d 433, 440-41 (2d Cir. 1998). "The statute of limitations is tolled until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." People ex rel. Spitzer ex rel. Ultimate Charitable Beneficiaries v. Ben, 866 N.Y.S. 2d 464, 465 (4th Dep't 2008) (citation omitted). If the breach of fiduciary duty sounds in fraud, the limitations period

14

does not expire until after the greater of "six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8); Elghanayan v. Victory, 596 N.Y.S. 2d 35, 36 (1st Dep't 1993).

Weisshaus's claims against Feder and Urbach for breach of fiduciary duty are time-barred.  Even assuming that the six-year statute of limitations applied, her claims would only be timely if they accrued in 2002 or later, as this action was filed in 2008.[7]

Weisshaus's claims against Feder arise from his representation of her, during which he made certain statements regarding the establishment of an escrow account for $112,500.  Feder ceased representing Weisshaus in 1996, when Justice Richard D. Hunter of the Supreme Court of New York permitted Feder to withdraw as Weisshaus's counsel.  Justice Hunter also ordered the distribution of the $112,500 escrow account.

---

[7] Weisshaus requests monetary damages and the appointment of a federal monitor to oversee day-to-day operations of the DDC in relief.  Because her request for injunctive relief, the appointment of the monitor, would be a remedy for the DDC's misconduct, not for any alleged breach of fiduciary duty by Feder or Urbach, her breach of fiduciary duty claims are properly understood as requesting monetary relief, and the three-year limitations period would normally apply.  Weisshaus's allegations against Feder and Urbach, however, include claims of fraud and thereby may invoke the longer limitations period of C.P.L.R. § 213(8).

Weisshaus filed a disciplinary grievance against Feder in 1998 and, in 1999, she brought a lawsuit in federal court challenging, <u>inter alia</u>, Feder's conduct with regard to the escrow account. <u>Weisshaus v. Mermelstein</u>, No. 99 Civ. 1493 (E.D.N.Y. filed Mar. 16, 1999). The Honorable Edward R. Korman issued an order granting Feder's motion to dismiss that lawsuit on March 31, 2000, and the Second Circuit Court of Appeals upheld the dismissal of her claims by summary order on April 22, 2004. <u>Weisshaus v. Mermelstein</u>, 94 Fed. Appx. 869, 870 (2d Cir. 2004).

Any breach of fiduciary duty arising from Feder's representation of Weisshaus accrued by January 1996, the date on which Feder was permitted to withdraw as her attorney. Applying the most generous statute of limitations period, six years, her claims thus expired by 2002 at the latest. The separate limitations period applicable to fraud claims, which provides that a claim expires six years after the fraud occurs or two years after the plaintiff did or should have discovered it, whichever is later, does not extend the period beyond 2002. The 1999 lawsuit filed by the plaintiff challenging Feder's conduct as her attorney and addressing the issue of the escrow account demonstrates that she had actually "discovered the fraud" by this date. Applying the limitations period of "two years from the time the plaintiff . . . discovered the fraud," N.Y.

16

C.P.L.R. § 213(8), her claims would have expired in 2001. Because this is earlier than 2002 -- six years after the latest date on which her claims for fiduciary breach accrued -- the six-year statute of limitations period will apply, and Weisshaus was required to bring her claims against Feder for breach of fiduciary duty by 2002.  Id.  This 2008 lawsuit, filed some six years after that date, is therefore untimely.  Weisshaus offers no explanation otherwise.[8]

The only factual allegation brought against Urbach, who was not retained as Weisshaus's attorney, is that he prepared and presented a false amended complaint in the Swiss Banks Litigation in 2000 in concert with Fagan.  Even assuming that his unspecified relationship to Weisshaus gave rise to some kind of fiduciary duty, the limitations period on that claim would have expired by 2006 at the latest.  Weisshaus's fiduciary duty claim against Urbach is therefore dismissed as time-barred.

---

[8] Even were Weisshaus to suggest that her 1999 lawsuit equitably tolled the limitations period for her claims against Feder, the 2000 dismissal of her case was affirmed by the Second Circuit in 2004.  As the Supreme Court has noted, "[w]hen a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply."  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962).  The Mermelstein lawsuit was filed over three years after Feder withdrew as her attorney in January 1996, and the instant lawsuit was filed nearly four years after the Second Circuit upheld the dismissal of the Mermelstein lawsuit.  Even excluding the period between March 13, 1999 and April 22, 2004, more than six years have elapsed between the January 1996 withdrawal of Fagan and the April 30, 2008 filing of this lawsuit.

CONCLUSION

The State Defendants' January 16, 2009 motion to dismiss is granted.  The January 16, 2009, January 21, 2009 and May 19, 2009 motions to dismiss filed by Feder and Urbach are granted. The State Defendants, Feder, and Urbach are thus dismissed as defendants in this lawsuit.  The surviving parts of the amended complaint are the breach of contract claim against Fagan in Count 2 and the allegations in Count 3 that Fagan breached fiduciary duties owed to Weisshaus.  A separate scheduling order shall issue governing the ongoing litigation between Fagan and Weisshaus.


SO ORDERED:

Dated:     New York, New York
           August 20, 2009


_____
DENISE COTE
United States District Judge

Copies sent to:

Gizella Weisshaus
203 Wilson Street
Brooklyn, NY 11211

Monica Anne Connell
Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271

Edward D. Fagan, Esq.,
10 Ferncliff Terrace
Short Hills, NJ 07078

Thomas Arthur Leghorn
Wilson Elser Moskowitz Edelman & Dicker LLP
177 Broad Street
6th Floor
Stamford, CT 06901

Jonathan Robert Harwood
Traub Lieberman Straus & Shrewsberry LLP
Seven Skyline Drive
Hawthorne, NY 10532